Eastern District of Kentucky
F I L E D

AUG - 1 2014

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CARLA MAUREEN GLASS,

    Plaintiff,

V.

CAROLYN COLVIN,
Acting Commissioner of Social
Security,

    Defendant.

CIVIL ACTION NO. 0:13-89-KKC

OPINION & ORDER

\*\*\* \*\*\* \*\*\*

The plaintiff, Carla Maureen Glass, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Carla Glass filed her claim for benefits on April 2, 2012, alleging a disability beginning January 1, 2012. Her claims were initially denied on July 17, 2012 (AR 128), and upon reconsideration on August 31, 2012. (AR 135, 138). Glass then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued an unfavorable opinion on April 5, 2013. (AR 16).

At the time of the alleged onset of disability, Glass was 31 years old with a high school education and completed one year of college courses. (AR 27). She claims to be disabled due to her bipolar disorder, chronic constipation, pain and grinding sensation in her knees due

to mild osteoarthritis and patellofemoral syndrome, complications from a pulmonary embolism, substance abuse, a pinched nerve in her neck, difficulty standing, and poor balance. Glass has a driver's license and uses it two to three times a week. (AR 40).

Glass describes a long history of treatment for mental health difficulties, particularly her bipolar disorder and depression. She has been a patient at Pathways, Inc. off and on for several years, during which she has experienced both highs and lows. For example, on April 25, 2012, the plaintiff's treatment notes indicates she was "pleasant and cooperative." (AR 611). The note further described her mood as appropriate to the situation. (AR 611). Plaintiff also denied any suicidal thoughts or ideation. (AR 611). Treatment notes from August of 2012 indicate Glass felt well and had a "good energy level." (AR 458).

Notably, Glass takes several medications that she claims cause negative side effects. In her hearing with the ALJ, she described taking Divalproex, Warfarin, Omeprazole, Bupropion Hydrochloride, Paroxetine, Linzess, and Risperidone. She testified that the medication is effective and helps her various conditions. (AR 53). However, Glass also complains of side effects from these medications. She claims to suffer from insomnia, constipation, and shakiness/balance problems. (AR 53, 65). Despite such complaints during her hearing, Glass points to no objective medical evidence related to these alleged side effects. In fact, Glass stated in her hearing that she has not informed her healthcare providers that she is experience some of these side effects. (AR 66 ("Q: Have you told Pathways that you think [your balance problems] might be a side effect? A: No, I have not.")).

Glass also testified at her hearing that she is able to perform a variety of regular household chores. She stated that she can cook, do the dishes, vacuum, mop, pay bills, clean, do laundry, and take out the trash. (AR 61–62). She also confirmed she goes grocery

shopping, goes out to visit people, uses a computer, enjoys pottery, and goes horseback riding. (AR 62–64). Glass testified that she takes care of three dogs and has a driver's license, which she uses to drive two to three times a week. (AR 40, 64).

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id.*

The burden of proof is on the claimant through the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ

3

reaches the fifth step without finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. (AR 21). At step two, the ALJ determined that Glass suffers from the following severe impairment: bipolar disorder. The ALJ found that the claimant's other alleged impairments were not severe. In the third step, the ALJ found that Glass does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 22).

At step four, the ALJ found that based on consideration of the entire record, Glass "has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine, and repetitive tasks that are performed in a work environment free of fast paced production requirements involving only simple, work-related decisions with few, if any, work place changes." (AR 24). The ALJ further found that Glass "should have only occasional interaction with the public; and only occasional supervision." (AR 24). Pursuant to his determination of the claimant's residual functional capacity, the ALJ found that Glass is able to perform past relevant work as a hotel maid.

4

Although the ALJ concluded that Glass could perform past relevant work, he went on to step five and determined that, as an alternative finding, there are other jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 27). This conclusion was based on consideration of the claimant's age, education, work experience, and residual functional capacity as well as the testimony of the vocational expert. (AR 27–28).

The Appeals Commission subsequently denied Glass's request for review on June 27, 2013. Glass has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made by proper legal standards. *See Cullip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a

whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

Glass raises three arguments as to how the ALJ committed error in evaluating her claim for disability benefits. First, Glass argues that the ALJ erred as a matter of law in finding that her status post pulmonary embolism with ongoing Coumadin treatment is not a severe impairment under step two. Second, Glass argues that the ALJ erred in giving little weight to the opinion of consultative examiner Alfred B. Adkins, and relying instead on the opinions of non-examining state agency physicians who did not have access to the complete record. Finally, Glass argues that the ALJ erred in relying on the testimony of the vocational expert, because the vocational expert's opinions were based on an inaccurate/incomplete explanation of her residual functional capacity. All of these arguments lack merit.

### 1. The ALJ Did Not Err in Determining Glass's Severe Impairments

Glass argues that ALJ erred when he failed to find that her status post pulmonary embolism with ongoing Coumadin treatment constituted a severe impairment at Step Two. Even if the ALJ's finding on this matter was in error, such error would be harmless. An ALJ's finding that an impairment is not severe at Step Two is not reversible error if the ALJ finds the claimant has at least one other severe impairment. *See Maziarz v. Sec'y of Health and Humans Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found that Glass's bipolar disorder constituted a severe impairment and it is therefore immaterial that he failed to make such a finding regarding the pulmonary embolism.

But the Court nonetheless finds that ALJ made no such error and his finding was supported by the substantial evidence. The ALJ reviewed Glass's claim regarding her

6

status post pulmonary embolism at step two. He noted that "the pulmonary embolism resolved within one year with Coumadin" and "does not cause significant work related limitations at this time." (AR 22). Glass does not point to a single piece of medical evidence supporting her claim that her status post pulmonary embolism presents an ongoing impairment, much less one that is severe. She states without providing evidentiary support that she is unable to work around machinery. (DE 17-1, at 7–8). She states that she cannot work as a hotel maid because she is unable to work around machinery, ignoring that this line of work does not involve moving mechanical parts, electric shock, or other hazards that might be related to machinery or sharp objects. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th Ed. 1991), § 323.687-014 Cleaner, Housekeeping, 1991 WL 672783. In short, Glass argues that the ALJ's finding was in error without providing any objective medical evidence or legal argument to support her claim other than to assert conclusions plainly contrary to the record and law. Her arguments on this issue are without merit and the Court finds the ALJ's determination of her severe impairments is supported by substantial evidence.

## 2. The ALJ Did Not Err in Evaluating the Opinions of the Medical Experts

The second alleged error is in regard to the ALJ's assessment of the medical opinions of Dr. Alfred B. Adkins, a consultative examiner. Dr. Adkins provided a medical opinion as a consultative psychologist, and examined Glass on June 7, 2012. (AR 481–85). He found that Glass is "likely to experience no impairment regarding the ability to understand, retain, and follow instructions. She is likely to experience no impairment regarding the ability to perform simple repetitive tasks. She is likely to experience marked impairment regarding the ability to relate to others including fellow workers and supervisors." (AR 484–85). And he further found "she is likely to experience marked impairment regarding the ability to

7

adapt the workplace." (AR 485). The ALJ, however, gave little weight to Dr. Adkins' assessment, finding instead that it is "inconsistent with the overall objective medical evidence." (AR 26). Specifically, the ALJ noted that Dr. Adkins' assessment was based solely on the claimant's subjective complaints, which including statements about seeing deceased relatives. (AR 26, 483). But claims of such hallucinations appear nowhere else in her treatment history. Dr. Adkins also observed that Glass "gave information freely and cooperatively," and "[h]er affect and behavior were appropriate for the situation and environment." (AR 483).

The ALJ's decision to give Dr. Adkins' opinion little weight was not in error. Medical opinions must be evaluated according to a particular regulatory framework. *See* 20 C.F.R. §§ 404.1527, 416.927. Significantly, the ALJ should give greater weight to medical opinions that are supported by the objective medical evidence and consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Medical opinions which are not supported by objective evidence and are not consistent with the record as a whole are properly discounted.

Here, the ALJ specifically noted two key problems with Dr. Adkins' assessment: it was based only on subjective medical evidence and it was inconsistent with the record as a whole. Glass contends that it was improper for the ALJ to discount his opinion solely because it was based on subjective evidence. She also argues that the ALJ improperly claimed it was inconsistent with the record as a whole without citing to any particular evidence. Both of Glass's claims are in error. First, while it's true that the ALJ should not reject psychiatric evidence solely because of the imprecision associated with psychiatric medicine, *see Blankenship v. Bowen*, 874 F.2d 1116, 1120 (6th Cir. 1989), the ALJ did not do that in this case. His finding regarding the subjective nature of the evidence was coupled

with the fact that the subjective evidence was inconsistent with the overall record, including a long history of the plaintiff's mental health treatment records. (AR 26). This finding is proper under §§ 404.1527.(c)(3) and 416.927(c)(3).

Glass is also incorrect in alleging that the ALJ erred by not citing to specific portions of the record when he made his finding that Dr. Adkins' assessment was inconsistent with the overall medical evidence. The ALJ stated that her claims of hallucinations during her visit with Dr. Adkins were inconsistent with her overall treatment history. He stated that she "never mentioned such hallucinations during treatment." (AR 26). Clearly it is impossible to cite to a specific portion of the record when the ALJ is claiming that such evidence *does not exist*. In this case, failing to make specific citations cannot be error. Moreover, if Glass believes the finding was wrong, she is free to make clear where the ALJ erred. This court will not "formulate arguments on [Glass's] behalf, or [ ] undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006). While she alleges that the ALJ erred by failing to cite a portion of the record (which he found does not exist), Glass herself cites no medical evidence contradicting the ALJ's finding.

Additionally, the record provides ample support for the ALJ's finding regarding Dr. Adkins' medical opinion. Dr. Adkins found that Glass had marked impairments with her ability to relate to others and adapt to workplace change. But Dr. Adkins' own assessment found she was cooperative and gave information freely (AR 483). Moreover, Glass's treatment history indicates she often had a normal mood and cooperative attitude. (AR

605). For all of the above-stated reasons, the Court finds that the ALJ's decision to give Dr. Adkins' medical assessment little weight is supported by substantial evidence.

Glass also contends that the ALJ erred in giving more weight to the non-examining state agency physician who did not have access to the complete medical/psychiatric record. The ALJ examined the opinion of Dr. Jane Brake, a non-examining state agency physician, noting that she found "the claimant has a moderately limited ability to maintain attention and concentration for extended periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors, but retains the ability to attend, concentration [sic], and persist during the completion of simple and routine tasks." (AR 26 (citing Exhibits 2A, 6A)).

Glass's alleged error comes in two parts: she claims that the non-examining physician Dr. Brake did not have access to the complete record, and that her assessment was based on statements by Glass that were inconsistent with the record. First, Glass gives no explanation regarding her claim that Dr. Brake did not review the complete record. She merely asserts this claim, without support, and cites an inapplicable district court case for support. *See Jones v. Astrue*, 808 F. Supp. 2d 993, 998 (E.D. Ky. 2011) (stating that when an ALJ relies on a non-examining physician over a *treating* source, "the non-examiner should have reviewed a *complete* record").

Second, Glass is incorrect in asserting that the ALJ should not have relied on Dr. Brake's assessment in lieu of contrary information provided by third parties. Dr. Brake's analysis relied in part on Glass's own statements that she "reported getting along well with authority." (AR 119). Glass contends that Brake's reliance on this statement was in error because it is contradicted by "third party statements in the record, the multiple short term jobs she held, and her therapist's repeated observations regarding her limited insight into

10

her mental health issues." (DE 17-1, at 10–11). First, Glass's treatment history affirms the self-reported statement by Glass. Treatment notes consistently describe Glass as "[r]eality based in short conversation." (AR 629, 630, 632, 635) (describing her attitude and demeanor as good, pleasant, stable, and cooperative).

Glass also points to statements made by her sister in an affidavit that "indicates Carla has little personal insight into her individual situations." (DE 17-1, at 11). The ALJ specifically addressed the statements by Glass's sister and found them incredible. (AR 26). The ALJ stated that her "report is inconsistent with the overall evidence that indicates the claimant has a driver's license and drives two to three times a week; attends to her own personal needs; takes care of her four-year-old daughter; cooks; cleans the house; vacuums; does the laundry; shops for groceries; and takes care of her three dogs." (AR 26). The ALJ provided specific reasons for discounting the evidence provided by Glass's sister, and therefore made no error in relying on the contradictory report by Dr. Brake. All of this evidence is consistent with Dr. Brake's assessment, and the ALJ did not err in giving weight to the non-examining state agency physician.

In sum, the ALJ's decision to give little weight to Dr. Adkins' assessment and greater weight to the non-examining state agency physicians is supported by the substantial evidence. Dr. Adkins' assessment was based on only subjective evidence and was inconsistent with the overall record. The state agency physicians, specifically Dr. Brake's assessment identified by Glass in her motion for summary judgment, were consistent with the record as a whole. Accordingly, the ALJ did not err in assessing these opinions.

3. **The ALJ Did Not Err in Relying on Testimony of the Vocational Expert**

Glass's final argument is that the vocational expert relied on an incomplete/inaccurate report of her residual functional capacity, and it was therefore error for the ALJ to rely on

the expert's finding that a significant number of jobs exist in the national economy that Glass could perform. Specifically, Glass argues that "the VE [sic] testimony in response to the ALJ's hypothetical which did not include an accurate description of Carla's medication side effects" is an improper basis to conclude that Glass is capable of performing work in the national economy. (DE 17-1, at 12). Glass notes that her residual functional capacity "did not include any limitations regarding risk cutting herself as a result of anticoagulant therapy, or psychiatric medication side effects such as dizziness or confusion on her ability to work around moving machinery or objects which pose a risk of bleeding if she should fall." (DE 17-1, at 13). Moreover, she states that "[t]here were no limitations regarding Carla's ability to balance, stoop, kneel or reach, all positional activities which could cause her to lose balance or become dizzy." (DE 17-1, at 13). Finally, Glass again notes that her RFC "included no 'marked' restriction of her ability to relate to fellow workers and supervisors or 'adapt to the workplace.'" (DE 17-1, at 13).

These arguments lack merit. To begin, Glass's arguments regarding a marked restriction on her ability to relate to fellow workers and supervisors has been discussed above. She relies on the assessment of Dr. Adkins for claiming the ALJ's findings were in error, and as discussed above, the ALJ's rejection of Dr. Adkins' medical opinion is supported by substantial evidence.

Glass's second argument—that the ALJ failed to properly account for the adverse side effects of her medication—is similarly without merit. It is not error for an ALJ to not include adverse side effects of medication in assessing a claimant's residual functional capacity when the claimant fails to provide objective medical evidence demonstrating she suffers from such side effects. *See Essary v. Comm'r of Soc. Sec.*, 114 Fed. App'x 662, 665–66 (6th Cir. 2004) ("Although [the claimant] testified that she suffered from dizziness and

drowsiness as a result of her medications, [the claimant's] medical records make no indication that [the claimant] reported such side effects to any of her physicians."). Here, Glass provides only subjective testimony regarding her adverse side effects and fails to point the Court to anywhere in the record where objective medical evidence supports her claims. In fact, Glass stated in her testimony she never advised her healthcare providers that she was experiencing adverse side effects. (AR 66). Because there is no objective medical evidence supporting her claims, the ALJ did not err in determining her residual functional capacity. The vocational expert therefore had a complete and accurate basis for her testimony. Glass's argument otherwise is meritless and the Court finds the ALJ's determination of her ability to perform both past work and other work in the national economy is supported by substantial evidence.

\*\*\*

For the reasons stated above, **IT IS ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 17) is **DENIED**;

2. The defendant's motion for summary judgment (DE 18) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated this 1st day of August, 2014.



Signed By:
Karen K. Caldwell
United States District Judge